UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

**UNITED STATES OF AMERICA,**

v.                                          CR. NO. 5:25-MJ-00429-RBF

**(1) RAMON ALFREDO BORUNDA-ISLAS,**

**O R D E R**

Before the Court is the United States of America's ("the Government") Appeal of Order Setting Bond, Motion for De Novo Detention Hearing, and Motion for Stay of Order Setting Bond. *ECF No. 12*. On April 1, 2025, the Court held a hearing ("the de novo hearing") on the Motion. *See* Min. Ent. Apr. 1, 2025. For the reasons set forth below, the Court **GRANTS** the Motion.

**BACKGROUND**

On March 18, 2025, the Government charged Defendant Ramon Alfredo Borunda-Islas ("Borunda-Islas") via Criminal Complaint with illegal reentry into the United States after deportation and conviction of a felony, in violation of 8 U.S.C. §§ 1326(a) and (b)(1). *ECF No. 3*. The same day, U.S. Magistrate Judge Richard B. Farrer issued an arrest warrant for Borunda-Islas. *ECF No. 5*. On March 19, 2025, authorities arrested Borunda-Islas.

On March 24, 2025, the Magistrate Judge held Borunda-Islas' detention hearing ("the detention hearing"). *See* Min. Ent. Mar. 24, 2025. At the detention hearing, the Magistrate Judge determined there are conditions of release that can reasonably assure Borunda-Islas' appearance

in court. *Id*. The Government advised their intent to appeal. *Id.* Subsequently, the Government filed the instant motion. *ECF No. 12*.

On April 1, 2025, the Undersigned held Borunda-Islas' de novo hearing. *See* Min. Ent. Apr. 1, 2025. At the de novo hearing, the Government called Immigration and Customs Enforcement ("ICE") Deportation Officer Michael Dryja ("Officer Dryja"). Hearing Transcript at 2:09–20:10. Officer Dryja is assigned to the Fugitive Operations Team and is a prosecuting officer within the team. *Id*. at 2:21–22.

Officer Dryja testified Borunda-Islas' arrest stemmed from the review of immigration databases after Borunda-Islas encountered law enforcement and received a traffic citation in 2018. *Id*. at 3:09–4:10. Based on the review, Officer Dryja determined authorities previously deported Borunda-Islas to Mexico on: (1) March 28, 2017; (2) May 25, 2017; and (3) July 28, 2017. *Id*. at 7:22–8:03.

After the review, authorities conducted surveillance at Borunda-Islas' last known address on three separate occasions: (1) March 6, 2025; (2) March 18, 2025; and (3) March 19, 2025. *Id*. at 4:17–4:24 and 5:08–509. Authorities observed Borunda-Islas in the front yard. *Id*. at 4:24–4:25. Authorities then obtained an arrest warrant for Borunda-Islas. *Id*. at 4:25–5:01.

On March 19, 2025, authorities along with Officer Dryja executed Borunda-Islas' arrest warrant. *Id*. at 5:12–7:04. Because Borunda-Islas did not answer the door, authorities breached the door, made entry, and arrested Borunda-Islas without incident. *Id*. at 5:15–5:17.

On scene, Officer Dryja interviewed Borunda-Islas. *Id*. at 6:17–7:04. Officer Dryja asked Borunda-Islas if he had any pending visas. *Id*. at 6:21–6:23. Borunda-Islas stated a "U-Visa" and mentioned hiring an immigration attorney. *Id*. at 6:23–25. Borunda-Islas further stated, however, he was not sure if an application had been filed or would be filed in the future. *Id*. at 7:03–7:04.

Upon Officer Dryja's request, Borunda-Islas did not provide any attorney's name or phone number. *Id*. at 7:01–7:02.

Once Officer Dryja returned to his office, he verified Borunda-Islas had no pending application for a U-Visa. *Id*. at 7:04–7:05. Officer Dryja further testified—between the March 24, 2025, detention hearing and the de novo detention hearing—he rechecked multiple times and found no U-Visa on file for Borunda-Islas. *Id*. at 4:11–4:14.

On cross-examination by Borunda-Islas' counsel, Officer Dryja confirmed he reviewed Borunda-Islas' prior removal documents, it appeared the removals were correctly effectuated, and the images in the prior removal documents matched Borunda-Islas. *Id*. at 9:00–9:18. Officer Dryja further confirmed Borunda-Islas is receiving dialysis three times a week while in the custody of the U.S. Marshall Service. *Id*. at 12:06–12:11. Officer Dryja finally confirmed prior to Borunda-Islas' removals he obtained work authorization in 2011. *Id*. at 14:07–14:19.

Borunda-Islas' counsel next called Borunda-Islas' daughter. *Id*. at 21:24–23:07. Borunda-Islas' daughter testified when she turns twenty-one years old next year she intends to file a petition for her father to be in the United States legally. *Id*. at 22:11–22:15.

**LEGAL STANDARD**

I. **The Bail Reform Act**

Under 18 U.S.C. § 3145(a)(1), the Government may file with the district court a motion to revoke a magistrate judge's order releasing a defendant pending trial. The district court reviews a motion to revoke a detention order de novo and "must make an independent determination of the proper pretrial detention or conditions for release." *United States v. Rueben*, 974 F.2d 580, 585 (5th Cir. 1992). A District Court has discretion to "support what the magistrate has actually ordered with additional findings based on its independent consideration

3

of the record before the magistrate and the additional evidence adduced before it." *United States v. Fortna*, 769 F.2d 243, 250 (5th Cir. 1985).

The Bail Reform Act, 18 U.S.C. § 3142, governs the release and detention of defendants awaiting trial. A judge may order a defendant detained pending trial based on a finding that the Government has established by a preponderance of the evidence that "no condition or combination of conditions will reasonably assure the appearance of the person," or by clear and convincing evidence that "no condition or combination of conditions will reasonably assure . . . the safety of any other person and the community." 18 U.S.C. § 3142(e)(1), (2); *see also Rueben*, 974 F.2d at 586 ("For pretrial detention to be imposed on a defendant, the lack of reasonable assurance of either the defendant's appearance, or the safety of others or the community, is sufficient; both are not required.").

Section 3142(g) of the act requires a court to consider the following factors in determining whether a person poses a flight risk or a danger to the community: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence; (3) the defendant's history and characteristics, including, among other things, his family ties, length of residence in the community, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release. 18 U.S.C. § 3142(g); *see also United States v. Acosta-Leyva*, 751 F.App'x 594, 595 (5th Cir. 2019) (per curiam).

## ANALYSIS

Neither the Government nor Borunda-Islas presented argument as to whether Borunda-Islas poses a danger to the community. Therefore, the Court's focus is whether Borunda-Islas

poses a flight risk and if the Government has established by a preponderance of the evidence no condition or combination of conditions will reasonably assure his appearance.

**I.   Flight Risk**

The Government contends Borunda-Islas is a flight risk because he repeatedly returned to the United States after being removed despite his convictions (one felony and three misdemeanors) for the same behavior. Hearing Transcript at 23:10–24:15. The Government points to Borunda-Islas' three consecutive removals in 2017 to demonstrate Borunda-Islas returned to United States within two months of each deportation. *Id*. at 24:25–25:02. The Government also points to Borunda-Islas' encounter with law enforcement in 2018 as evidence Borunda-Islas has continued to knowingly break the law for at least six years. *Id*. at 30:09–30:21. Finally, the Government seeks to support its flight risk argument on the basis an immigration detainer is in place against Borunda-Islas.[1] *Id*. at 18:12–19:05 and 23:25–24:04.

In turn, Borunda-Islas contends he is not a flight risk because he desires to remain in San Antonio for his family as well as for his health and safety. Hearing Transcript at 24:25–25:02. Borunda-Islas argues he has lived in the same house—which he owns—since 2006, pays taxes, and has not tried to evade law enforcement since his encounter with law enforcement in 2018. *Id*. at 32:11–32:22. Borunda-Islas also argues Title 8 § 215.3(g) of the Code of Federal Regulations provides a mechanism for allowing Borunda-Islas to depart the country and return for further court proceedings. *Id*. at 30:09–30:21.

The Court finds Borunda-Islas' illegal status in the United States is an overriding factor in support of the Government's argument he is a flight risk. Although Borunda-Islas did not flee after his encounter with law enforcement in 2018, he was not facing the possibly of

---

[1] *But cf. United States v. Baltazar-Sebastian*, 990 F.3d 939, 945 (5th Cir. 2021) ("Fundamentally, the BRA [Bail Reform Act] and INA [Immigration and Nationality Act] concern separate grants of Executive authority and govern independent criminal and civil proceedings.").

imprisonment if found guilty. Section 1326(a) provides that the maximum sentence shall be a fine and/or imprisonment up to two years. Section 1326(b)(1) increases the maximum penalty to a fine and/or imprisonment up to ten years if the removal of the defendant was preceded by a conviction for a felony. Borunda-Islas therefore faces a 10-year term of imprisonment.

The Court further finds Borunda-Islas' history and characteristics, including his past conduct and criminal history, to be an important factor in support of the Government's argument he is a flight risk. At the de novo hearing, Officer Dryja testified he determined authorities previously deported Borunda-Islas to Mexico on: (1) March 28, 2017; (2) May 25, 2017; and (3) July 28, 2017. Hearing Transcript at 7:22–8:03. Despite this, Borunda-Islas repeatedly returned to the United States without authorization, in violation of federal law. Accordingly, the Court is not assured Borunda-Islas is able to abide by the primary condition of any bond—that a defendant shall not violate any federal, state, or local law.

Accordingly, these facts support a finding Borunda-Islas is a flight risk and no condition or combination of conditions will reasonably assure his appearance at trial.

## CONCLUSION

Therefore, the Court **ORDERS** the Government's Appeal of Order Setting Bond, Motion for De Novo Detention Hearing, and Motion for Stay of Order Setting Bond are **GRANTED**. *ECF No. 12*.

The Court further **ORDERS** that United States Magistrate Judge's March 24, 2025, oral order releasing Borunda-Islas is hereby **REVOKED**.

It is so ORDERED.
SIGNED this 2nd day of April, 2025.

JASON PULLIAM
UNITED STATES DISTRICT JUDGE